IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FRANCES J. HANLON, on behalf of herself and those similarly situated, | ) ) ) |
| Plaintiffs, | ) CASE NO. 21 CV 3057 |
| V. | ) ) |
| PHH MORTGAGE CORPORATION, AS SUCCESSOR TO MAVERIK FINANCIAL CORP., PHH MORTGAGE SERVICING CORPORATION, AND PHH MORTGAGE SERVICES | ) ) ) ) ) ) |
| Defendants | ) ) |

**COMPLAINT FOR VIOLATIONS OF THE ILLINOIS CONSUMER INSTALLMENT LOAN ACT, FINANCIAL EXPLOITATION OF AN ELDERLY PERSON, QUITE TITLE ACTION, BREACH OF CONTRACT, AND INTENTIONAL INFLICTON OF EMOTIONAL DISTRESS**

NOW COMES, FRANCES J. HANLON, BY AND THROUGH HER COUNSEL, Law Offices of Robert T. Hanlon, and Associates P.C. with her complaint against PHH MORTGAGE CORPORATION, PHH MORTGAGE SERVICING CORPORATION AND PHH MORTGAGE SERVICES and states as follows in support thereof:

Parties Citizenship – Complete Diversity

1) Plaintiff, Frances J. Hanlon, is an 88 year old (days away from being 89 years old) citizen of the State of Illinois residing at 1505 East Hawthorne Street, Arlington Heights, Illinois 60004. Plaintiff has continually maintained her residence at 1505 East Hawthorne Street, Arlington Heights, Illinois 60004 since its construction in 1964 or thereabouts and has maintained no other residence since 1964 or thereabouts.

2) Each of the Defendants are incorporated in New Jersey. Defendants PHH Mortgage Corporation, PHH Mortgage Servicing Corporation, and PHH Mortgage Services maintain their

principle offices in New Jersey and are Citizens of New Jersey for Diversity Purposes. Each are doing business in Illinois under the name PHH Mortgage and are collectively referred herein as PHH.

3) PHH MORTGAGE CORPORATION is the successor to Maverik Financial Corp. PHH a wholly owned subsidiary of Ocwen Financial Corp incorporated in Florida with its office in West Palm Beach, FLorida. Ocwen Financial Corp's stock as listed on the NYSE symbol OCN. PHH now operates as Ocwen.

4) PHH Mortgage servicing and PHH Mortgage Services are also successors to the mortgage servicing performed previously by Maverick Financial Corp.

## Jurisdiction and Venue

5) This Court has jurisdiction over the matters in controversy in this case based upon Diversity Jurisdiction pursuant to United States Code 28 U.S.C. 1332(a) because there is complete diversity of citizenship between Plaintiffs and Defendants, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6) Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims in this Complaint occurred in this District and, as discussed above, because Defendants are subject to the Court's personal jurisdiction in this District.

## **Short Statement of the Case**

7) Defendants had an obligation to make periodic payments under a reverse mortgage loan. Defendants engaged in a fraudulent scheme and artifice to manufacture a false claim of default to facilitate unauthorized charges and bilk an elderly plaintiff and others like her. Commencing in April, 2021 Defendants refused to make the periodic payments or to even discuss the issue with Plaintiff. In January 2021 or thereabouts Defendant alleged its agent trespassed upon Plaintiff's

property and attempted to charge Plaintiff $20.00 for an inspection fee and a purported recalculation of the loan, based upon the $20 charge, purportedly divested Plaintiff of all right to receive funds under the Reverse Mortgage loan. Plaintiffs causes of action contain two class action claims, violation of the Illinois Consumer Installment Loan Act, violation of the Illinois Financial Exploitation of an elderly person and Disabled Persons Act. The remaining three counts are to quiet title, for breach of contract, and intentional infliction of emotional distress ("IIED"). Jurisdiction is based on diversity jurisdiction with complete diversity and amounts in controversy in excess of $75,000.

## Facts

8) In July 2013 Plaintiff (at age 81) applied for and on December 31, 2013 was granted a reverse mortgage loan from Maverick Funding Corporation ("Maverick").

9) On December 31, 2013 Plaintiff executed a note, a mortgage, and a loan agreement with Maverick/MERS (Mortgage Electronic Registration Systems, Inc.).

10) A key provision to the reverse mortgage was that Maverick would make periodic monthly payments to Plaintiff during her lifetime so long as the Property located at 1505 East Hawthorne Street, Arlington Heights, IL (hereinafter "the Property") remained plaintiff's principal residence. Plaintiff has maintained her principal residence at the Property at all time relevant.

11) In fact, the entire purpose of the reverse mortgage agreement was to afford Plaintiff adequate income to provide for her needs during the balance of her retirement as well as afford Plaintiff the ability to be retired without economic worry or emotional distress over monthly income.

12) Plaintiff's principal residence has been the Property since 1964 or thereabouts.

13) At no time since the application for the reverse mortgage loan has Plaintiff had any other residence than the Property.

14) At a point in time after the issuance of the reverse mortgage, but specifically unknown to plaintiff, Defendant PHH Mortgage Corporation acquired Maverick's interest and obligations under the reverse mortgage loan with plaintiff.

15) In December 2020 PHH made a demand of Plaintiff to "certify her occupancy" in the Property (although not required by the loan documents or mortgage). Nevertheless, in accord with PHH's request, Plaintiff voluntarily certified her occupancy of the Property.

16) Thereafter, on two more occasions between January and March, 2021 PHH made a similar demands for Plaintiff to "certify" her occupancy and twice thereafter Plaintiff re-certified that she remains in occupancy of the Property.

17) The specific language in the mortgage reads as follows:

> Due and Payable. Lender may require payment in full of all sums secured by this Security instrument (in Pertinent Part) if: (i) A borrower dies and the Property is not the Principal residence of at least one surviving Borrower or (iii) the Property ceases to be the Principal residence of Borrower for reasons other than death and the Property is not the Principal residence of at least one other Borrower or (iv) for a period of longer than 12 consecutive months, a borrower fails to occupy the Property because of physical or mental illness and the property is not the principal residence of at least one other Borrower.

18) PHH acknowledged its receipt of one such certification from Plaintiff in March 2021. However, beginning in April 2021, PHH refused to make the monthly payment required of it under the reverse mortgage installment loan based on the purported failure of plaintiff to occupy the property, even though the Property remained Plaintiff's sole residence.

19) Likewise, PHH failed to make the monthly payments in May and June 2021.

20) Moreover, PHH charged Plaintiff a $20.00 Inspection fee.

21) Plaintiff never agreed to the $20.00 "inspection fee" or any inspection.

22) No person made any appointment with Plaintiff to "inspect" the Property.

23) Based upon the purported inspection fee of $20, PHH "re-calculated" Plaintiffs reverse mortgage alleging insufficient funds on the availability of the Reverse Mortgage account.

24) However, in its mailed statement, PHH acknowledged that adequate funds and equity exist to make the payments that are due under the reverse mortgage.

25) In April 2021 Plaintiff sought the assistance of counsel. At that time, via telephonic conference, an agreement was made between PHH representatives and Plaintiff to conduct a conference call with PHH "supervisors" to address the issues of non-performance by PHH. A date and time was established for the call and PHH then refused to participate in the call that they themselves suggested and scheduled.

26) There has never been an occurrence of an event of default by Plaintiff under the parties' reverse mortgage agreements.

27) Within the Home Equity Conversion Mortgage Disclosure (Application Truth in Lending Disclosure) Maverick informed Plaintiff that it could terminate payments if: "The Property is no longer the principal residence of at least one Borrower". The Property has at all times relevant been the principal residence of Plaintiff who was defined in the disclosures as the "Borrower".

28) Throughout the reverse mortgage application process PHH, via its predecessor Maverick used the phrase "Reverse and Relax" on nearly every document it provided to Plaintiff.

29) The "Reverse and Relax" phrase was designed to infer that PHH (via its predecessor) was a trustworthy party to enter into a reverse mortgage and that it would reduce the worry and anxiety that are experienced by elderly people seeking to use the equity in their homes for retirement purposes.

30) PHH knew that instability of retirement income would cause emotional distress to Plaintiff as it suggested that she "Reverse and Relax" to avoid emotional distress and financial worry.

31) PHH also knew, in the absence of payments, Plaintiff could not "Relax". Rather, Plaintiff would suffer emotional distress concerning the loss of her retirement income.

Count I Violation of the Illinois Consumer Installment Loan Act
(Class Action Under Rule 23)

32) Plaintiff restates and realleges paragraphs 1-31 as if fully restated herein in this Count I.

33) The Illinois Consumer Loan Act prohibits lenders from charging fees that are not authorized by Statute. See 205 ILCS 670 et seq.

34) The State of Illinois provided in pertinent part, (205 ILCS 670/15d) (from Ch. 17, par. 5419) the following:

> Sec. 15d. Extra charges prohibited; exceptions. No amount in addition to the charges authorized by this Act shall be directly or indirectly charged, contracted for, or received, except (1) lawful fees paid to any public officer or agency to record, file or release security; (2) (i) costs and disbursements actually incurred in connection with a real estate loan, for any title insurance, title examination, abstract of title, survey, or appraisal, or paid to a trustee in connection with a trust deed, and (ii) in connection with a real estate loan those charges authorized by Section 4.1a of the Interest Act, whether called "points" or otherwise, which charges are imposed as a condition for making the loan and are not refundable in the event of prepayment of the loan; (3) costs and disbursements, including reasonable attorney's fees, incurred in legal proceedings to collect a loan or to realize on a security after default; (4) an amount not exceeding $25, plus any actual expenses incurred in connection with a check or draft that is not honored because of insufficient or uncollected funds or because no such account exists; and (5) a document preparation fee not to exceed $25 for obtaining and reviewing credit reports and preparation of other documents. This Section does not prohibit the receipt of a commission, dividend, charge, or other benefit by the licensee or by an employee, affiliate, or associate of the licensee from the insurance permitted by Sections 15a and 15b of this Act or from insurance in lieu of perfecting a security interest provided that the premiums for such insurance do not exceed the fees that otherwise could be contracted for by the licensee under this Section. Obtaining any of the

>items referred to in clause (i) of item (2) of this Section through the licensee or from any person specified by the licensee shall not be a condition precedent to the granting of the loan.
>
>(Source: P.A. 89-400, eff. 8-20-95; 90-437, eff. 1-1-98.)

35) In charging Plaintiff $20 for a purported inspection, PHH violated the Illinois Consumer Installment Loan Act because the charge is not specifically authorized in the Act.

36) Upon Information and belief, PHH has charged the $20.00 fee to at least 40 separate borrowers in violation of the Illinois Consumer Installment Loan Act.

37) There is not known to Plaintiff or her counsel, any other Class Action lawsuit related to PHH's imposition of the $20 fee for purported inspections.

38) Pursuant to *Fed. R. Civ. P. 23(b)(3)* plaintiff brings this action on behalf of herself, and all others similarly situated, as representatives of the following class (the "Class"):

>Each and every individual borrower having a reverse Mortgage which PHH charged a $20.00 inspection fee in violation of the Illinois Consumer Installment Loan Act.

39) The Requirements of *Fed R. Civ. P 23* are met in this case. The class, as defined, is so numerous that joinder of all members is impracticable.

40) There are questions of fact and law common to the Class as defined, which common questions predominate over any questions affecting only individual members. The common questions include:

   a. Who did PHH charge inspection fees;

   b. Was the age of the borrower on each reverse mortgage in excess of 60 years of age;

   c. Did PHH collect the Inspection fees from the class members;

   d. Were the borrower's in a fabricated default;

    e. whether PHH instructed its employees to manufacture fraudulent allegations of non-occupancy.

41) Plaintiff can and will fairly and adequately represent and protect the interests of the Class as defined hereinabove and have no interests that conflict with the interests of the Class. This is because:

    a. all questions of fact regarding liability of PHH are common to the class and predominate over any individual issues that may exist, such that by prevailing on each of her own claims, Plaintiff will necessarily establish the liability of PHH to all class members;

    b. without the representation provided by the Plaintiff, it is unlikely that any class member would receive legal representation to obtain the remedies specified by the Illinois Consumer Installment Loan Act;

    c. a remedy available under the Illinois Consumer Installment Loan Act is civil liability of up to $1,000 for each violation of the Act, which plaintiff intends to seek for each and every member of the Class; and

    d. Plaintiffs have retained competent counsel, who is experienced in federal litigation, and class action litigation. Plaintiff and her counsel have the necessary resources to adequately and vigorously litigate this class action, and Plaintiffs and their counsel are aware of their fiduciary responsibility to the class members and are determined to diligently discharge those duties to obtain the best possible recovery for the Class.

42) All Class members have the same legal rights under the Illinois Consumer Installment Loan Act. PHH's violations of the Illinois Consumer Installment Loan Act have affected the rights of thousands of borrowers in a similar way. The class action is superior to any other method for remedying PHH's violations of the Illinois Consumer Installment Loan Act given that common questions of fact and law predominate and the liquidated damage provision of the Illinois Consumer Installment Loan Act which provide an identical monetary remedy to each and every member of the class. Class treatment is likewise indicated to ensure optimal compensation for the class and limiting the expense and judicial resources associated with legions of potential claims.

43) PHH knowingly obtained unauthorized fees for purported inspections.

44) Pursuant to the Illinois Consumer Installment Loan Act PHH is liable for charging unauthorized fees.

45) Plaintiffs and each of the members of the Class are entitled to liquidated damages in the amount of $1,000 for each instance in which PHH charged a $20 inspection fee to unsuspecting elders.

46) Section 205 ILCS 670/24.5 provides for the following:

Sec. 24.5. Injunction; civil penalty; costs. If it appears to the Director that a person or any entity has committed or is about to commit a violation of this Act, a rule promulgated under this Act, or an order of the Director, the Director may apply to the circuit court for an order enjoining the person or entity from violating or continuing to violate this Act, the rule, or order and for injunctive or other relief that the nature of the case may require and may, in addition, request the court to assess a civil penalty up to $1,000 along with costs and attorney's fees.
(Source: P.A. 90-437, eff. 1-1-98.)

47) Affected persons may advance a cause of action under the Illinois Consumer Installment Loan Act.

48) Illinois recognizes four factors to be considered in determining if a private right of action may be implied from a statute. Implication of a private right of action is appropriate if: (1) the plaintiff is a member of the class for whose benefit the statute was enacted; (2) the plaintiff's injury is one the statute was designed to prevent; (3) a private right of action is consistent with the underlying purpose of the statute; and (4) implying a private right of action is necessary to provide an adequate remedy for violations of the statute. See Fisher v. Lexington Health Care, 188 Ill. 2d 455, 456, 722 N.E.2d 1115, 1116, 1999 Ill. LEXIS 1628, *1, 243 Ill. Dec. 46, 47, 15 I.E.R. Cas. (BNA) 1489.

49) In this case, plaintiff and each member of the class are for who's benefit the Illinois Consumer Installment Loan Act was intended to benefit, Plaintiff and members of the class have the same type of injury that the Illinois Consumer Installment Loan Act seeks to eliminate, Plaintiff and the class she seeks to represent have a cause of action consistent with the underlying purpose of the Illinois Consumer Installment Loan Act, and implying a private right of action is necessary to provide an adequate remedy for violations of the Illinois Consumer Installment Loan Act.

50) The specific language in the mortgage at issue reads as follows:

> Due and Payable. Lender may require payment in full of all sums secured by this Security instrument (in Pertinent Part) if: (i) A borrower dies and the Property is not the Principal residence of at least one surviving Borrower or (iii) the Property ceases to be the principal residence of Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower or (iv) for a period of longer than 12 consecutive months, a borrower fails to occupy the Property because of physical or mental illness and the property is not the principal residence of at least one other Borrower.

51) Given that the charges are not authorized and Plaintiff and others like her have been charged the purported inspection fee, There is commonality amongst the claims.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

    a. Awarding Plaintiffs compensatory damages including actual, consequential, incidental damages in an amount to be determined by a jury at trial for the damages caused, as well as past and prospective financial losses, in an amount not less than $1,000.00. for Plaintiff and each member of the Class and not less than $1,000,000 for the Class as a whole.

    b. Issue an injunction prohibiting PHH from further violations of the Illinois Consumer Installment Loan Act.

    c. Award Punitive Damages to the maximum allowable.

    c. Awarding Plaintiff attorney fees and costs, and

    d. Granting such other relief as the Court deems appropriate and necessary.

Count II
Violation of the Illinois Financial Exploitation of an Elderly Person
<u>(Class Action Under Rule 23)</u>

52) Plaintiff restates and re alleges paragraphs 1-51 as if fully set forth in this Count II.

53) Reverse mortgages are by their nature only available only to individuals over 60 years of Age under certain proprietary reverse mortgage loans but generally the minimum age is 62. Thus, all individuals that PHH has extended a reverse mortgage are in excess of 60 years of Age.

54) Pursuant to (720 ILCS 5/17-56(c)(1) an elderly person is defined as any person over 60 years of age.

55) The Illinois financial exploitation of the elderly law (720 ILCS 5/17-56) (was 720 ILCS 5/16-1.3) reads, in pertinent part:

> Sec. 17-56. Financial exploitation of an elderly person or a person with a disability.
>   (a) A person commits financial exploitation of an elderly person or a person with a disability when he or she stands in a position of trust or confidence with the elderly person or a person with a disability and he or she knowingly:
>     (1) by deception or intimidation obtains control over the property of an elderly person or a person with a disability; or

>> (2) illegally uses the assets or resources of an elderly person or a person with a disability.

56) PHH stands in a position of trust with each and every reverse mortgage borrower, including Plaintiff, because each rely upon PHH to make monthly payments to each of them.

57) PHH used deception to obtain control over the amounts that were to have been disbursed to Plaintiff under the reverse mortgage.

58) Upon information and belief, plaintiff used deception to obtain control over the amounts that were to have been disbursed to at least 40 similarly situated persons.

59) PHH has also illegally used the resources of Plaintiff and each person similarly situated by retaining a security interest in real estate owned by each elderly Reverse Mortgage borrower without funding the loans as required by contract and charging impermissible fees.

60) The Requirements of *Fed R. Civ. P 23* are met in this case. The class, as defined, is so numerous that joinder of all members is impracticable.

61) There are questions of fact and law common to the Class as defined, which common questions predominate over any questions affecting only individual members. The common questions include:

   a. Who did PHH charge inspection fees;

   b. Was the age of the borrower on each reverse mortgage in excess of 60 years of age;

   c. Did PHH collect the Inspection fees from the class members;

   d. Were the borrower's in a similar fabricated default;

   e. whether PHH instructed its employees to manufacture fraudulent allegations of non-occupancy.

62) Plaintiff can and will fairly and adequately represent and protect the interests of the Class as defined hereinabove and have no interests that conflict with the interests of the Class. This is because:

 a. all questions of fact regarding liability of PHH are common to the class and predominate over any individual issues that may exist, such that by prevailing on each of their own claims, Plaintiffs will necessarily establish the liability of PHH to all class members;

 b. without the representation provided by the Plaintiff, it is unlikely that any class member would receive legal representation to obtain the remedies specified by the Illinois Financial Exploitation of the elderly or Persons with a Disability Act 720 ILCS 5/16-1.3;

 c. a remedy available under the Illinois Consumer Installment Loan Act is civil liability of treble damages for each occurrence, which plaintiff intends to seek for each and every member of the Class; and

 d. Plaintiffs have retained competent counsel, who are experienced in federal litigation, labor matters and class action litigation. Plaintiffs and their counsel have the necessary resources to adequately and vigorously litigate this class action, and Plaintiffs and their counsel are aware of their fiduciary responsibility to the class members and are determined to diligently discharge those duties to obtain the best possible recovery for the Class.

63) All Class members have the same legal rights under the Illinois Financial Exploitation of the elderly or Persons with a Disability Act. PHH's violations of the Illinois Financial Exploitation of the elderly or Persons with a Disability Act have affected the rights of thousands of elderly borrowers in a similar way. The class action is superior to any other method for remedying PHH's violations of the Illinois Financial Exploitation of the elderly or Persons with a Disability Act given that common questions of fact and law predominate and the Illinois Financial Exploitation of the elderly or Persons with a Disability Act which provide an identical monetary remedy to each and every member of the class. Class treatment is likewise indicated to ensure optimal compensation for the class and limiting the expense and judicial resources associated with legions of potential claims.

64) PHH knowingly obtained unauthorized fees for purported inspections. Based upon information and belief PHH received over $100,000 in such purported inspection fees.

65) Pursuant to the Illinois Consumer Installment Loan Act PHH is liable for charging unauthorized fees which is further a violation of the Illinois Financial Exploitation of the elderly or Persons with a Disability Act.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:
a. Awarding Plaintiffs compensatory damages including actual, consequential, incidental damages in an amount to be determined at by a jury at trial for the damages caused, as well as past and prospective financial losses, in an amount not less than $1,000,000.00.

b. Award Punitive Damages to the maximum allowable.

c. Awarding Plaintiff attorney fees and costs, and

d. Granting such other relief as the Court deems appropriate and necessary.

COUNT III
Quiet Title Action
by Plaintiff related to Plaintiff's Property

66) Plaintiff restates and re-alleges paragraphs 1-65 as if fully set forth in this Count III.

67) Illinois follows the Restatement on Contracts 2nd (ALI 1982).

68) The Restatement on Contracts 2nd provides that when a party to a contract breaches, the other party is relieved of any future performance. See Restatement on Contracts 2nd at 237.

69) Here, PHH breached its agreement with Plaintiff in a material way in that it failed to make three consecutive payments under the Reverse Mortgage installment loan.

70) The security interest granted by Plaintiff to PHH is therefore unenforceable due to the breach of material terms by PHH.

Wherefore Plaintiff prays that this honorable court grant the following relief.

A) Declare that Plaintiff has no obligation to make any payment to PHH or its successors.

B) Quiet title on that property located at 1505 East Hawthorne, Arlington Heights, IL 60004 by declaring the Mortgage recorded as document #s 1404508089 &1404508090 are void and of no effect.

C) For such other and further relief as this court deems just and equitable.

Count IV
Breach of Contract

71) Plaintiff restates and re-alleges paragraphs 1-41 as if fully set forth in this Count IV.

72) PHH unilaterally "recalculated" a new monthly payment from $1,453.70/Mo to $1,120.05 based on the purported $20 inspection fee.

73) Plaintiff never agreed to the recalculated monthly payment amount.

74) Plaintiff entered into a contract with PHH via its predecessor Maverick in December 2013 that required monthly payments of $1,453.70

75) PHH defaulted on the contract by failing to pay the monthly payments of April, May and June, 2021. PHH further defaulted by alleging that it would make a monthly payment of only $1,129.05, but failed to make any such payment.

76) PHH claims a security interest of $454,500 even though it has only advanced less than $190,000 and the purported re-calculation is based upon the purported inspection fee and other self serving calculations by PHH.

77) Plaintiff has timely performed all obligations of plaintiff including payment of taxes, and insurance on the Property and has not defaulted in any way.

78) Plaintiff has suffered damages as a result of the breach by PHH as referenced hereinabove.

Wherefore Plaintiff prays that this honorable court grant the following relief.

A) Declare that Plaintiff has no obligation to make any payment to PHH or its successors as a result of PHH's material breach.

B) Quiet title on that property located at 1505 East Hawthorne, Arlington Heights, IL 60004 by declaring the Mortgage recorded as document #s 1404508089 &1404508090 are void and of no effect.

C) For such other and further relief as this court deems just and equitable.

Count V

<u>Intentional infliction of Emotional Distress</u>

79) Plaintiff restates and re-alleges paragraphs 1-41 as if fully set forth in this Count V.

80) PHH's unilateral decision to charge unauthorized fees to feign a purported default of non-occupancy is extreme and outrageous.

81) The refusal of PHH to make the periodic payments due under the reverse mortgage served to inflict emotional distress in Plaintiff.

82) PHH obtained the subject reverse mortgage because its predecessor marketed to Plaintiff the "Reverse and Relax" scheme. Nevertheless, by failing to even make a modified payment placed Plaintiff in extreme emotional distress without the ability to "relax".

83) Plaintiff has suffered anxiety that was reasonably foreseeable by PHH when PHH terminated payments to Plaintiff.

84) PHH's business is lending to the elderly with its reverse mortgage products.

85) PHH therefore ought to have known its unilateral action in terminating the monthly payments under a reverse mortgage would cause emotional distress in Plaintiff.

86) The emotional distress has manifested itself in Plaintiff with physical manifestation of the emotional distress including *inter alia* the production of tears, chest pains, and arrhythmia/heart palpitations.

87) In January 2021, Plaintiff was recovering from cancer surgery. During the month of December 2020, Plaintiff was conferring with various doctors on her medical treatment.

88) As a result of Plaintiff's diminished physical condition, common of an 88 year old person PHH ought to have known its unilateral elimination of payments to plaintiff would create emotional harm to Plaintiff.

Wherefore Plaintiff prays that this honorable court grant the following relief.

A) Award Plaintiff damages in excess of $75,000 or such other amount necessary for jurisdiction of this court as determined at trial for compensatory damages.

B) Punitive damages to the maximum allowable by law but not less than $1,000,000.

C) For such other and further relief as this court deems just and equitable.

JURY TRIAL DEMANDED

Under Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues so triable in this action.

Respectfully submitted,

/s/Robert T. Hanlon

Robert T. Hanlon, Esq.
Pro hac vice